**WILSON TOOL & DIE, INC.,**
Plaintiff/Appellant,

v.

**TBDN–TENNESSEE COMPANY,**
Defendant,

Gibson County Plastics, Inc., Doing Business as Venture I Division of G.C.P., Inc., Defendant/Respondent,

and

Darrell Duren, Doing Business as Duren Tool & Die Company, Defendant.

No. ED 89445.

Missouri Court of Appeals, Eastern District, Division One.

Nov. 6, 2007.

Douglas B. Salsbury, Michael A. Connon, co-counsel, Eureka, MO, for appellant.

Ian C. Simmons, Federer & Federer, P.C., St. Charles, MO, for respondent.

KATHIANNE KNAUP CRANE, Presiding Judge.

This is an appeal from the dismissal of an action to recover damages for breach of oral contract for lack of personal jurisdiction over a Tennessee defendant, pursuant to the long-arm statute, section 506.500 RSMo (2000). On appeal, plaintiff claims that the trial court abused its discretion when it granted defendant's motion to dismiss because defendant made a contract in Missouri, transacted business in Missouri, and had sufficient minimum contacts with Missouri to satisfy due process. Because plaintiff has shown a transaction of business and the requisite minimum contacts, we reverse and remand.

On October 23, 2006, plaintiff, Wilson Tool and Die, Inc., filed an amended petition to recover damages for breach of contract and relief for unjust enrichment against defendants TBDN–Tennessee Company (TBDN); Gibson County Plastics, Inc., doing business as Venture I, a Division of G.C.P., Inc. (G.C.P.); and Darrell Duren, doing business as Duren Tool & Die Company (Duren). In its amended petition, plaintiff alleged that it was a Missouri corporation with its principal place of business in the County of St. Charles, Missouri, and was in the business of providing tool and die services and fabricating tools and dies for customers; that TBDN was a supplier of Lexus automobile parts; that G.C.P. was a Tennessee corporation; and that Duren was in the business of providing tool and die services. Plaintiff further alleged that TBDN contracted with G.C.P. to produce a die needed in the manufacture of Lexus automobiles; that G.C.P., in turn, contracted with Duren to design and fabricate the die; and that Duren fell behind schedule. It alleged that defendants then turned to plaintiff to salvage the only partially completed die and to finish the fabrication of the die; that the die was delivered by Duren to plaintiff in Missouri; that plaintiff completed the project and shipped the die to G.C.P. in November 2005; and that none of the defendants paid plaintiff for the work.

Plaintiff thereafter voluntarily dismissed TBDN. G.C.P. separately filed a motion to dismiss plaintiff's amended petition on several grounds, including the trial court's lack of personal jurisdiction over G.C.P. It supported its motion with an affidavit by G.C.P.'s president, Joe Cottrell.

In his affidavit, Mr. Cottrell averred that G.C.P.'s only office was in the City of Yorkville, Tennessee, and it did not maintain an office in Missouri. He recounted that in September 2005, a representative of plaintiff "made an unannounced sales call" to G.C.P.'s office. On October 9, 2005, Mr. Cottrell telephoned plaintiff's representative to determine if plaintiff would be able to fabricate a die on an expedited basis. Plaintiff's representative responded that plaintiff could do the work. Later that same day, Mr. Cottrell telephoned plaintiff's office from Tennessee and spoke with plaintiff's scheduler about the need for the die. In this conversation, the scheduler offered plaintiff's services to complete the fabrication of the die, and Mr. Cottrell verbally accepted the offer. After that date, plaintiff and G.C.P. communicated only by telephone and written correspondence to monitor the status of the project.

Plaintiff filed suggestions in opposition to G.C.P.'s motion to dismiss. The circuit court granted the motion without prejudice, concluding that the court lacked jurisdiction over defendant under the Missouri long-arm statute. Plaintiff subsequently voluntarily dismissed Duren.

## DISCUSSION

For its sole point relied on, plaintiff asserts that the trial court erred in dismissing its amended petition for lack of personal jurisdiction over G.C.P. under the long-arm statute because G.C.P. entered into a contract in Missouri that was performed in Missouri, transacted business in Missouri related to the contract, and had minimum contacts with Missouri. It argues that the facts alleged in its amended petition and the facts contained in Mr. Cottrell's affidavit support its position.

 "When a defendant raises the issue of lack of personal jurisdiction, the burden shifts to the plaintiff to make a prima facie showing of jurisdiction by showing: (1) that the action arose out of an activity covered by the long-arm statute, section 506.500, and (2) that defendant

had sufficient minimum contacts with the forum state to satisfy due process requirements." *Conway v. Royalite Plastics, Ltd.,* 12 S.W.3d 314, 318 (Mo. banc 2000) (citing *Chromalloy American Corp. v. Elyria Foundry Co.,* 955 S.W.2d 1, 4 (Mo. banc 1997)). Activities covered by the long-arm statute include the transaction of any business within Missouri and the making of any contract within Missouri. Section 506.500.1(1), (2) RSMo (2000).

> To demonstrate that the action arose out of an activity covered by this statute, a plaintiff must make a prima facie showing of the validity of its claim. *Stavrides v. Zerjav,* 848 S.W.2d 523, 527 (Mo.App.1993); *Dillaplain v. Lite Industries, Inc.,* 788 S.W.2d 530, 533 (Mo. App.1990). A plaintiff need not prove all of the elements that form the basis of the defendant's liability, but must show that acts contemplated by the statute took place. *Id.* at 534.

*Conway,* 12 S.W.3d at 318.

When a motion to dismiss for lack of long-arm jurisdiction "is based on facts not appearing on the record, the trial court may hear it on affidavits presented by the parties, or the court may direct that the matter be heard wholly or partly on oral testimony or deposition." *Conway,* 12 S.W.3d at 318 (citing *Chromalloy,* 955 S.W.2d at 4 and Rule 55.28). "[T]he trial court's inquiry is limited to an examination of the petition on its face and the supporting affidavits to determine the limited question of personal jurisdiction." *Chromalloy,* 955 S.W.2d at 3 n. 3. We "must affirm the trial court's ruling regarding jurisdiction if the affidavits submitted by the defendants in support of their motions to dismiss show they did not commit any act sufficient to invoke the jurisdictional provisions of the Missouri [l]ong [a]rm [s]tatute." *Id.* (quoting *Quelle Quiche v. Roland Glass Foods,* 926 S.W.2d 211, 213 (Mo.App.1996)). However, a plaintiff can also rely on averments in the defendant's affidavits to make its prima facie showing of jurisdiction. *See Chromalloy,* 955 S.W.2d at 4.

The determination of jurisdiction is for the trial court "in the first instance." *Stavrides v. Zerjav,* 848 S.W.2d 523, 527 (Mo.App.1993). "But the sufficiency of the evidence to make a prima facie showing that the trial court may exercise personal jurisdiction is a question of law, . . . which we review independently on appeal." *Id.*

### a. *Making a Contract*

We first consider plaintiff's claim that the circuit court could exercise long-arm jurisdiction on the basis that a contract had been made in the state as set out in section 506.500.1(2). For purposes of long-arm jurisdiction, a contract is made where acceptance occurs. *Johnson Heater Corp. v. Deppe,* 86 S.W.3d 114, 119 (Mo. App.2002). Here, the contract was accepted in Tennessee when Mr. Cottrell orally accepted plaintiff's representative's offer of plaintiff's services to do the work. Since the contract was made in Tennessee, subsection (2) of the long-arm statute does not confer jurisdiction.

### b. *Transacting Business*

We next consider whether G.C.P. transacted any business in the state. Subsection (1) of the long-arm statute, which extends jurisdiction over out-of-state defendants for the "transaction of any business," must be construed broadly. *State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner,* 677 S.W.2d 325, 327 (Mo. banc 1984). A business transaction, for purposes of this statute, may consist of a single transaction if it is the transaction that gives rise to the lawsuit. *Id.*

In *Metal Serv.,* the Georgia relator, Metal Service, negotiated a contract by telephone with a Missouri company, Roton,

by which Metal Service shipped unfinished materials to Roton in Missouri to have work done on them and then shipped the product back to Metal Service. After some of the work had been done, a dispute arose, and Metal Service refused to pay for the work. Roton filed a lawsuit in the Circuit Court of the City of St. Louis to recover the contract price. Metal Service sought a writ of prohibition to compel the circuit court to grant its motion to dismiss for lack of jurisdiction.

In denying the writ, the Missouri Supreme Court first held that there was no jurisdiction under subsection (2) of the long-arm statute because the contract was made in Georgia, where it was accepted. *Id.* at 327. However, it held that there was a transaction of business in Missouri because Metal Service transacted business in Missouri when it shipped materials into Missouri for work by Roton and retook them after the work had been done. *Id.* at 327–28.

This case is indistinguishable from *Metal Serv.* G.C.P. contracted with plaintiff to complete the fabrication of a metal die in Missouri. The incomplete die was delivered to Missouri by Duren, which had started the fabrication of die for G.C.P., to be finished. Plaintiff finished the die and shipped it to G.C.P. By causing the unfinished die to be shipped into Missouri for further fabrication and retaking it after it was completed, G.C.P. transacted business in Missouri. Even though it was a single transaction, it was the transaction that gave rise to this lawsuit. The uncontested facts alleged in the petition and the averments in Mr. Cottrell's affidavit made a prima facie showing of a transaction of business.

c. *Due Process*

■■■■ We next consider whether the exercise of jurisdiction over G.C.P. comports with due process. The Fourteenth Amendment due process clause requires that, in order to subject a non-resident defendant to *in personam* jurisdiction, the defendant have certain minimum contacts with the forum state so that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Conway*, 12 S.W.3d at 318; *Chromalloy*, 955 S.W.2d at 5. To determine whether a non-resident defendant has sufficient minimum contacts for a Missouri court to have personal jurisdiction, we consider five factors: "1) the nature and quality of the contact; 2) the quantity of those contacts; 3) the relationship of the cause of action to those contacts; 4) the interest of Missouri in providing a forum for its residents; and 5) the convenience or inconvenience to the parties." *Conway*, 12 S.W.3d at 318.

■■■■ In order to establish minimum contacts within the forum state, a plaintiff must show that the defendant has taken some act by which it purposefully avails itself of the privilege of conducting business within the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant's contacts with the forum state must be purposeful, so that it should reasonably anticipate being haled into a court of that state. *Chromalloy*, 955 S.W.2d at 5; *see Burger King*, 471 U.S. at 475–76, 105 S.Ct. 2174; *Conway*, 12 S.W.3d at 318, 319; *Metal Serv.*, 677 S.W.2d at 328.

In *Metal Serv.*, the Missouri Supreme Court held that because Metal Service shipped its materials into Missouri in order to have work done on them in Missouri, it could expect to be sued in Missouri if it did not pay for the work. 677 S.W.2d at 328. It further held that "[t]he interests of Roton in being allowed to sue

in Missouri are apparent, and Metal Service had the required contact." *Id.*

Here there was no dispute about the facts. The petition and affidavit were sufficient as a matter of law to make a prima facie showing of the requisite minimum contacts. Although plaintiff had paid a sales call on G.C.P. a month earlier, there is no averment that connects that call with the transaction that gave rise to this lawsuit. Rather, G.C.P. initiated the contact with plaintiff for this transaction when it inquired about plaintiff's ability to do the work that is the subject of the lawsuit. *See Gangwere v. Bischoff,* 935 S.W.2d 783, 785–86 (Mo.App.1996). G.C.P. purposefully chose a Missouri company to do the work and caused the die to be shipped to Missouri to have work done on it in Missouri. Thus, the oral contract was to be performed in Missouri and that performance became the transaction that gave rise to the cause of action. In these circumstances, G.C.P. could reasonably expect to be sued in Missouri if it did not pay for that work. Missouri has an interest in providing a forum for its residents to bring a lawsuit in this situation. These were sufficient minimum contacts to constitute due process. *See Metal Serv.,* 677 S.W.2d at 328.

*Conclusion*

G.C.P. transacted business in Missouri and had sufficient minimum contacts with Missouri to satisfy due process. The circuit court erred in dismissing plaintiff's claim for lack of jurisdiction. The judgment of the circuit court is reversed and remanded.

ROBERT G. DOWD, JR., J. and KENNETH M. ROMINES, J., concur.