**POOR BOY TREE SERVICE, INC., Appellant,**

v.

**DIXIE ELECTRIC MEMBERSHIP CORPORATION, Respondent.**

**No. SD 31805.**

Missouri Court of Appeals, Southern District, Division Two.

Feb. 4, 2013.

John Edmund Price, Springfield, for Appellant.

George W. Reinbold, IV, Springfield, for Respondent.

DANIEL E. SCOTT, P.J.

We consider long-arm jurisdiction. Dixie,[1] a Louisiana electric cooperative with no general presence in or connections to Missouri, was hit hard by Hurricane Gus-

---

1. We refer to the parties as "Poor Boy" and "Dixie" and use rounded dollar figures.

tav. Dixie accepted, by phone, Poor Boy's offer to send crews and equipment. Poor Boy's convoy worked in Louisiana some ten days.

Poor Boy billed Dixie $2.8 million. Dixie paid only $2.3 million. Poor Boy, a Missouri company, sued in Missouri for the balance. The trial court sustained Dixie's jurisdictional challenge and dismissed the case, rejecting Poor Boy's theory that Dixie's single phone call to Missouri satisfied long-arm requirements.

Poor Boy reasserts its theory on appeal. We affirm the dismissal.

## Background

We focus, as Poor Boy has, on the phone call and surrounding circumstances.

Poor Boy offers emergency cleanup and logistics services after major storms. It worked in Louisiana after Hurricane Katrina, and again made its services and pricing known in Louisiana when Hurricane Gustav threatened. Dixie apparently received this information.

Gustav devastated Dixie's service area. Poor Boy president Ty Bewley tried to call Dixie, but could not get through. Bewley emailed that Poor Boy had some 180 men "[r]eady to roll your way" and for Dixie to call him. Via satellite phone call with Bewley that day, Dixie's Jeff Kilpatrick accepted the offer. Bewley promptly sent men and equipment to Louisiana, eventually leading to the Missouri lawsuit and jurisdictional issues now before us.

## Legal Principles/Claim on Appeal

Because the material facts are not disputed, our review is de novo. Bryant v.

Smith Int. Design Group, Inc., 310 S.W.3d 227, 231 (Mo. banc 2010). It was Poor Boy's burden to overcome Dixie's jurisdictional challenge. Id.

First, the court inquires whether the defendant's conduct satisfies Missouri's long-arm statute, section 506.500. If so, the court next evaluates whether the defendant has sufficient minimum contacts with Missouri such that asserting personal jurisdiction over the defendant comports with due process.

Id. (citation omitted).

Poor Boy claims that Kilpatrick's phone call "into" Missouri meets this test. As to § 506.500 specifically, Poor Boy argues that Dixie both made a Missouri contract and transacted business here.[2] We disagree.

## Dixie Made No Contract in Missouri

Poor Boy posits that (1) a contract is made where acceptance occurs; (2) Kilpatrick called "into" Missouri to accept Bewley's offer; thus (3) the contract was made in Missouri. The first two may be true; the third is not. Such a contract is made in the state where the acceptor speaks into the phone. See Wilson Tool & Die, Inc. v. TBDN–Tennessee Co., 237 S.W.3d 611, 614, 615 (Mo.App.2007). This view finds general acceptance. See, e.g., 2 Williston on Contracts § 6:34 (4th ed.2007); 1 Corbin on Contracts § 3:25 (rev. ed.1993).

## Dixie Did Not Transact Business in Missouri

Acknowledging as an established principle that, of itself, one phone call is

2. Dixie would be subject to Missouri jurisdiction under § 506.500 RSMo 2000, as relevant here, for causes of action arising out of: *(1) its transaction of business in Missouri; (2) its making of a contract in Missouri;* (3) its commission of a tortious act in Missouri; (4) its ownership, use, or possession of Missouri real estate; or (5) its contracting to insure a person, property, or risk located in Missouri at time of contracting. We have italicized the two theories asserted by Poor Boy.

not "transacting business" for long-arm purposes,[3] Poor Boy openly asks us to create an exemption based on the emergency nature of its business. We decline this invitation, in part because Poor Boy admits that it finds no case law support therefor. Also, as Dixie notes, Poor Boy failed to develop this claim factually in the full year between Dixie's motion and the ruling thereon.

Poor Boy alleges that it entered contracts in Missouri for material equipment, and the like after Dixie accepted the offer of 180 men "[r]eady to roll your way!!!!!!" But these were Poor Boy's dealings, not Dixie's. Poor Boy's cited cases merit scant discussion because, as Poor Boy admits, they are distinguishable.[4]

**Conclusion**

The trial court did not err. Since Poor Boy failed to show that Dixie transacted business or contracted in Missouri, or otherwise brought itself within § 506.500, we need not reach the issue of minimum contacts. The dismissal is affirmed.

DON E. BURRELL, C.J., and SHEFFIELD, J., Concur.

3. See *Tiger Mfg. Corp. v. Loadstar Material Handling Equip., Ltd.*, 341 F.Supp.2d 1107, 1112 (W.D.Mo.2004); *Johnson Heater Corp. v. Deppe*, 86 S.W.3d 114, 120 (Mo.App.2002).

4. *Tiger Mfg.* based jurisdiction solely on a Missouri contract, rejecting the business transaction claim. 341 F.Supp.2d at 1110–11. In *Wilson*, a Tennessee company shipped material into Missouri to be reworked and shipped back. 237 S.W.3d at 614, 616. This does not aid Poor Boy, who concedes that Dixie shipped no product to Missouri.