Sandra FARRIS, Plaintiff–Appellant,

v.

Sharon BOYKE, Joyce Burkland, and Judith Cotte, Defendants–Respondents.

No. 20597.

Missouri Court of Appeals, Southern District, Division One.

Dec. 13, 1996.

Steven M. Hamburg, Andrea L. Weiss, Summers, Compton, Wells & Hamburg, P.C., St. Louis, for plaintiff-appellant.

Bradshaw Smith, Van Buren, for respondent Cotte.

John L. Oliver, Oliver, Oliver & Waltz, P.C., Cape Girardeau, for respondents Boyke and Burkland.

BARNEY, Presiding Judge.

Sandra Farris (Appellant) appeals from the Order of the Circuit Court of Carter County, Missouri, dismissing her amended three count petition against Sharon Boyke, Joyce Burkland and Judith Cotte (Respondents).

Expressly citing §§ 506.500.1 and .3, RSMo Cum.Supp.1993 [1] as a basis for obtaining personal jurisdiction over Respondents, Appellant sought the imposition of a constructive trust over Respondent trust beneficiaries' interests in land and proceeds derived from the sale of lands distributed to the beneficiaries. Additionally, Appellant prayed for money damages resulting from breaches of fiduciary duties by Respondents/successor trustees Burkland and Boyke.

In its Order, the trial court recited that it based its dismissal of the amended petition and the quashing of process and service of process on the basis that it had not acquired personal jurisdiction over the three Respondents under § 506.500.[2] Additionally, the trial court found that Respondent Cotte was an "indispensable party" under the provisions of Rule 52.04.[3]

Appellant raises four points of trial court error which are discussed below.

I

The parties are all sibling beneficiaries of an inter vivos trust (the Trust) created by their mother, Mrs. Dorothy K. Pinckney, (Settlor) a resident of Elmhurst, Illinois. Settlor named herself as trustee and named Respondents Boyke and Burkland as successor co-trustees. The Trust was executed in Illinois on June 11, 1992, and the trust instrument provided that the Trust was to be "governed by and interpreted in accordance with the laws of the State of Illinois." All of the Respondents are residents of Illinois and Appellant is a resident of Missouri.

Before her death on August 13, 1992, Settlor conveyed to the Trust approximately 3,300 acres of real estate located in Carter County, Missouri. In her trust, Settlor directed the successor co-trustees, *inter alia*, to "convey by deed or otherwise one-quarter (¼) of said lands to each of my four children free of this trust." Settlor further directed that in dividing the land, "the successor [co-]trustees take into account my desire that each child receive land containing river frontage, road frontage and creek frontage in substantially equal shares."

---

1. The Missouri Long Arm Statute.

2. *During the course of the hearing on all motions, on July 24, 1995, Appellant was granted leave to file a First Amended Petition, which she subsequently did on September 11, 1995. Allegations contained in Appellant's amended petition were argued during the hearing and briefed by the parties thereafter.*

   Appellant had originally filed a two count petition solely against Respondents Burkland and Boyke. Counts I and II were virtually duplicative in their prayer, seeking equitable relief voiding previous real estate conveyances to the four beneficiaries of the trust and seeking reapportionment of part of the trust corpus consisting of real estate theretofore distributed to the beneficiaries by the successor co-trustees. Respondents Burkland and Boyke filed their motions to quash process and service of process on the basis of lack of personal jurisdiction. Additionally, they moved to dismiss Appellant's petition for lack of subject matter jurisdiction because all of the trust corpus had been theretofore distributed and moved to dismiss Counts I and II on the basis that the petition failed to state facts supporting a cause of action and for substantive reasons relating to Respondents Burkland and Boyke's unfettered power to dispose of the real estate in question. Further, they filed alternate motions to make more definite and certain and to strike. Respondent Cotte filed a motion to quash process and service of process on the basis of the court's lack of personal jurisdiction over her. She then mirrored Respondents Burkland and Boyke's *motions to dismiss and entered a "limited and special appearance ... challenging and requesting the quashing of the process and service of process."*

3. All rule references are to Missouri Rules of Civil Procedure (1995).

The affidavits and answers to interrogatories filed herein reveal that in compliance with the Trust's directives, after the death of the Settlor, the successor co-trustees made four trips to Missouri to investigate the real estate which was an asset of the trust corpus. In this connection they conferred with Jim and Mary Shaddox and Judge David Hedspeth. Additionally, several dozen telephone conversations, facsimiles and letters were transmitted back and forth from Illinois.

Upon returning to Illinois the successor co-trustees engaged the services of an Illinois attorney to draft the deeds distributing the real estate to the beneficiaries. These deeds were drafted and executed by the successor co-trustees in Elmhurst, Illinois, and were mailed from there to Respondent Cotte and Appellant. After these conveyances, no other trust assets remained in the State of Missouri.

After receipt of her deed, Respondent Cotte sold all of her inherited property. Respondents Burkland and Boyke also sold portions of their inherited real estate.

The evidence further shows that Respondent Cotte made two trips to Missouri to investigate the real estate assets of the trust: (1) in April of 1992 before the Trust was created; and (2) in December of 1992 during which visit she was driven by Appellant around the real estate and generally viewed the property.

Appellant asserts that the court erred in its finding that: (1) it had no personal jurisdiction over all the Respondents herein; (2) there was no subject matter jurisdiction over the real estate sufficient to allow service of process under Rules 54.12 and 54.14 so as to impose a constructive trust over the real property and in turn confer jurisdiction over all of the Respondents; (3) Respondent Cotte was an indispensable party as per Rule 52.04;

and (4) Respondents Burkland and Boyke had not waived their jurisdictional objections by their pleadings.

## II

In review of Appellant's first point, we note that Appellant has the burden of making a prima facie showing that the trial court has personal jurisdiction[4] over Respondents. *Stavrides v. Zerjav,* 848 S.W.2d 523, 527 (Mo.App.1993). When the motion is based on facts not appearing of record, the trial court may hear the matter on affidavits presented by the respective parties and the trial court may believe or disbelieve the statements contained in the affidavits. *Id; see also* Rule 55.28. The determination of the jurisdictional issue is for the trial court in the first instance. However, the sufficiency of the evidence to make a prima facie showing that the trial court may exercise personal jurisdiction is a question of law, which this Court reviews independently on appeal. *Stavrides,* 848 S.W.2d at 527.

A trust is not a legal entity. The trustee is the legal owner of the trust property, in which the beneficiaries have equitable ownership. *McDaniel Title Co. v. Lemons,* 626 S.W.2d 686, 690 (Mo.App.1981); *Simmons v. Friday,* 224 S.W.2d 90, 94 (Mo.1949). As a general rule, in suits involving trust property, both the trustees and beneficiaries are necessary parties. *Roth v. Lehmann,* 741 S.W.2d 860, 862 (Mo.App.1987).

In a court's review of a motion to dismiss for lack of personal jurisdiction over a non-resident, a two step inquiry is necessary. First, a determination must be made as to whether the non-resident committed one of the acts enumerated in the Missouri Long Arm Statute, § 506.500, RSMo Supp. 1993.[5] Secondly, a determination must be

---

**4.** Personal jurisdiction over a party is sometimes referred to as *in personam* jurisdiction. "A judgment *in personam* imposes a personal liability or obligation on one person in favor of another." *Hanson v. Denckla,* 357 U.S. 235, 246 n. 12, 78 S.Ct. 1228, 1235 n. 12, 2 L.Ed.2d 1283 (1958).

**5.** Section 506.500, the Missouri Long Arm Statute reads, in pertinent part, as follows:

1. Any person or firm, whether or not a citizen or resident of this state, ... who in person or through an agent does any of the acts enumerated in this section, thereby submits ... to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:

made as to whether the exercise of personal jurisdiction over the non-resident would violate due process. *Shirkey v. McMaster,* 876 S.W.2d 648, 649 (Mo.App.1994).

In passing on Appellant's first allegation of trial court error, it is not necessary for this Court to review the applicability of the Missouri Long Arm Statute. This is because none of the activities undertaken by either Respondents Burkland and Boyke or Respondent Cotte meet the second threshold requirement of minimum contacts with the forum state sufficient to impose *in personam* jurisdiction.

■■■ "A defendant must maintain certain minimum contacts with the forum state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Watlow Elec. Mfg. Co. v. Sam Dick Indus., Inc.,* 734 S.W.2d 295, 297 (Mo.App.1987) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "Like any standard that requires a determination of 'reasonableness', the 'minimum contacts' test of *International Shoe* is not susceptible of mechanical application; rather the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *State ex rel. Sperandio v. Clymer,* 581 S.W.2d 377, 382 (Mo. banc 1979). Random, fortuitous or attenuated contacts with the forum state cannot create jurisdiction. *Elaine K. v. Augusta Hotel Assocs.,* 850 S.W.2d 376, 378 (Mo.App.1993) (citing *Burger King v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Nor may jurisdiction be predicated upon the unilateral activity of those who claim some relationship with the non-resident defendant. *Id.* (citing *Hanson,* 357 U.S. at 253–54, 78 S.Ct. at 1239–40, 2 L.Ed.2d 1283 (1958)). It has also been held that the use of interstate mail and telephone facilities were insufficient contacts with the forum to satisfy due process in the assertion of long arm jurisdiction.

(1) The transaction of any business within this state;

(3) The commission of a tortious act within this state;

*TSE Supply Co. v. Cumberland Natural Gas Co.,* 648 S.W.2d 169, 170 (Mo.App.1983).

■■ In judging minimum contacts, a court properly focuses upon the relationship among the defendant, the forum and the litigation. *Id.*

"In determining the existence of sufficient minimum contacts, the following factors are to be considered: (1) the nature, quality, and quantity of the contacts with Missouri; (2) the relationship of the cause of action to those contacts; (3) the interest of Missouri in providing a forum for its residents; and (4) the convenience and inconvenience to the parties." *Laney v. Nigro,* 905 S.W.2d 902, 904–05 (Mo.App.1995).

The basic due process test is whether the defendant has "'purposefully availed itself of the privilege of conducting activities within the forum state.'" *Elaine K.,* 850 S.W.2d at 378.

■■ We note that the minimum contacts required in the products' liability area involving stream of commerce are less stringent than in other areas. *State ex rel. William Ranni Assocs., Inc. v. Hartenbach,* 742 S.W.2d 134, 138 (Mo. banc 1987). Also, a single tortious act is sufficient to support personal jurisdiction consistent with due process standards. *State ex rel. Caine v. Richardson,* 600 S.W.2d 82, 84 (Mo.App.1980). *See,* however, *Sperandio,* 581 S.W.2d at 383.

■■ Respondents Burkland and Boyke's physical presence in Missouri on four occasions and their telephone calls and communications with people within the state, do not provide those affiliating connections with the forum state such that they should reasonably anticipate being hauled into court in Missouri. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). At most their contacts with Missouri were random, fortuitous and attenuated contacts born of the necessity of compliance with the directives of an Illinois trust.

(4) The ownership, use, or possession of any real estate situated in this state....

In *State ex rel. Barnes v. Gerhard,* 834 S.W.2d 902 (Mo.App.1992), an Illinois lawyer traveled into Missouri on behalf of his Illinois client, made numerous telephone calls in and out of Missouri and held additional conferences in Missouri relating to the representation of his client. The Eastern District of this Court held that the Illinois lawyer's activities did not provide sufficient contacts to support personal jurisdiction in Missouri against him. *Id.* at 904.

In the instant case, the successor co-trustees and three of the four beneficiaries are residents of Illinois. The trust was created by an Illinois resident who instructed that the trust instrument was to be governed by the laws of the State of Illinois. The trust instrument also contained a provision providing that the successor trustees would have sole discretion as to the division of the property in Missouri and that their decision would be final. Further, the actual division of the real property took place in the State of Illinois where the deeds were executed. This constituted unilateral activity on the part of the successor co-trustees involving the fortuitous location of real property in Missouri.

■■■ Respondent Cotte's contacts with Missouri are more attenuated. She received title to her Missouri property by deed executed by the successor co-trustees in Illinois. She then sold all of her interest in her inherited real property by a deed executed and delivered by her in the State of Illinois. Respondent Cotte made one visit to Missouri after her mother's death.

Respondent Cotte lacked those affiliating minimum contacts with the forum state such that the maintenance of an *in personam* action against her would offend traditional notions of fair play and substantial justice. *See International Shoe,* 326 U.S. at 316, 66

S.Ct. at 158. Appellant's Point One is denied.

## III

■■■ In Appellant's second point of trial court error, she essentially argues on this appeal that *in rem* jurisdiction over the real estate located in Missouri constituted a sufficient nexus to confer jurisdiction over the property for the purposes of imposing a constructive trust, "which in turn, confers jurisdiction over all of the respondents" when service of process is made under Rules 54.12 and 54.14.

We cannot consider this point of error because *in rem* jurisdiction was not the theory presented to the trial court below for its consideration. "An appellate court will not, on review, convict a trial court of error on an issue which was not put before it to decide." *First Bank Centre v. Thompson,* 906 S.W.2d 849, 859 (Mo.App.1995); *see also Kiener v. Powell,* 865 S.W.2d 864, 867 (Mo.App.1993). Appellant specifically pled that the trial court obtained personal jurisdiction over the Respondents on the basis § 506.500.1 and .3, and not on the basis of *in rem* jurisdiction [6] over the real estate that formed the bulk of the trust corpus. Appellant's Point Two is denied.[7]

## IV

In view of this Court's ruling on Appellant's first two points of error, Appellant's third point of error, relating to the trial court's determination that Respondent Cotte is an indispensable party under Rule 52.04, is rendered moot and need not be addressed.

## V

■■■ Appellant's final point of error also lacks merit. Appellant argues that by serving interrogatories, requests for admissions

---

6. "A judgment *in rem* affects the interests of all persons in designated property. A judgment *quasi in rem* affects the interests of particular persons in designated property. The latter is of two types. In one the plaintiff is seeking to secure a pre-existing claim in the subject property and to extinguish or establish the nonexistence of similar interests of particular persons. In the other the plaintiff seeks to apply what he concedes to be the property of the defendant to the

satisfaction of a claim against him." *Hanson,* 357 U.S. at 246 n. 12, 78 S.Ct. at 1236 n. 12.

7. This Court makes no determination as to whether or not, when properly pled and reviewed by the trial court, the trial court could have obtained *in rem* jurisdiction over the real property and hence the parties interest in the real property.

and a request for production of documents, Respondents Burkland and Boyke have taken actions wholly inconsistent with objecting to the personal and subject matter jurisdiction of Missouri and, therefore, the trial court erred in finding that it did not have jurisdiction over Respondents Burkland and Boyke.

Following service of process, Respondents Burkland and Boyke filed their motion to quash process and service of process alleging they were non-residents and denying that Missouri had personal jurisdiction over them. Coupled with the foregoing motion, the Respondents also filed other pertinent motions heretofore mentioned. Simultaneously, Respondents propounded interrogatories, sought production of documents and made a request for admissions upon Appellant.

Rule 55.27(a) provides that the defense of lack of jurisdiction over the subject matter and person, insufficiency of process and service of process "may at the option of the pleader be made by motion." The rule further provides that "[m]otions and pleadings may be filed simultaneously without waiver of the matters contained in either. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion."

Rule 55.27(f) states that "[a] party who makes a motion under this Rule 55.27 may join with it any other motions herein provided for and then available to the party."

Although the use of "special appearance" was a "historical way" to challenge jurisdiction over the person before Missouri adopted the Civil Code of 1943, it is not necessary to use the words "special appearance" to challenge the court's jurisdiction over the person. *In re Marriage of Wheeler,* 743 S.W.2d 605, 606 (Mo.App.1988). "Want of jurisdiction over the person may be raised by answer or by motion at the option of the pleader, but it is not necessary to use the label of 'special appearance' in either the motion or an answer." *Id; see also State ex rel. Metal Service Center v. Gaertner,* 677 S.W.2d 325, 327 (Mo. banc 1984).

"[I]f a defendant first challenges the court's jurisdiction, he may then: 'enter and probe into the merits of the case without the necessity of making the time-honored 'special appearance' or reserving the jurisdictional point at each stage of the procedure. Having once hoisted the flag at the beginning of the journey a litigant over whose person a court lacks jurisdiction need not continuously wave the flag at every way station along the route." *Walker v. Gruner,* 875 S.W.2d 587, 589 (Mo.App.1994).

In *State ex rel. White v. Marsh,* 646 S.W.2d 357 (Mo. banc 1983), the Supreme Court of Missouri stated that a defendant "may join other motions with a motion challenging jurisdiction over the person and, if the challenge is unsuccessful in the trial court, the defendant can defend on the merits without waiving the right to pursue the issue of personal jurisdiction on appeal." *Id.* at 361 (footnote omitted). It then recognized that in cases where the long arm statutes are used and where substantial interests are involved, motions setting forth the facts as to minimum contacts must often be supported by affidavits requiring detailed investigation and careful preparation. "A properly prepared affidavit can be of great assistance to the Court in ruling a motion." *Id.*

We are aware that *Marsh* generally stands for the proposition that obtaining an extension of time to file responsive pleadings does not operate to waive any of the defenses and objections set forth in Rule 55.27(a). Nevertheless, *Marsh* also implicitly recognizes that cases involving the use of long arm statutes and the requirement of showing minimum contacts with the forum state, or the lack thereof, necessitate the presentation of intricate facts to the trial court. To aid in this endeavor it is necessary that litigants use discovery procedures to obtain these facts from each other. This, of course, is subject to the trial court's power pursuant to Rule 56.01(c) to restrict the scope of such discovery request. *See State ex rel. Deere and Co. v. Pinnell,* 454 S.W.2d 889, 894 (Mo. banc 1970).

We hold that Respondents Burkland and Boyke did not waive their objection to the personal and subject matter jurisdiction of the trial court by the filing of their motions

coupled with requests for discovery.[8] Point denied.

The dismissal for want of jurisdiction over the person is necessarily a dismissal without prejudice. *See* Rule 67.03; *Bennett v. Rapid American Corp.*, 816 S.W.2d 677, 680 (Mo. banc 1991) (Blackmar, J., concurring in part and dissenting in part).[9]

The Order of the trial court is affirmed.

GARRISON and PREWITT, JJ., concur.

---

8. "To prove the jurisdictional factum, the proponent may resort to discovery or other evidence relevant to that purpose." *Moore v. Christian Fidelity Life Ins. Co.*, 687 S.W.2d 210, 211 (Mo.App.1984)(citing *State ex rel. Deere and Co. v. Pinnell*, 454 S.W.2d 889, 894 (Mo. banc 1970). Conceptually then the opposing party may likewise engage in discovery without waiving its objections to the jurisdiction of the forum.

9. In their brief, Respondents Burkland and Boyke admit that "plaintiff can obviously acquire direct *in personam* jurisdiction over Cotte, Boyke and Burkland in Illinois and with the exact same lawsuit in Illinois attempt to effect the exact relief sought in this case".