George H. GANGWERE, Appellant,

v.

Robert J. BISCHOFF, Respondent.

No. WD 52480.

Missouri Court of Appeals,
Western District.

Dec. 17, 1996.

Karen Zambri Schutter, Kansas City, for appellant.

William G. Howard, Olathe, Kansas, Robert Bischoff, Corpus Christi, Texas, for respondent.

HANNA, Presiding Judge.

The plaintiff, George Gangwere, appeals from the circuit court's order dismissing the plaintiff's petition and quashing service on the defendant, Robert Bischoff.

In the fall of 1989, the defendant, a Texas resident, telephoned the plaintiff to solicit the plaintiff's investment in Sunaco Energy. In order to induce the plaintiff to invest in Sunaco, the defendant prepared a letter on November 13, 1989. The letter was a personal guarantee by the defendant, which stated that if the plaintiff invested $10,000 in Sunaco and the investment did not yield a thirty percent return within sixteen months, the defendant would re-purchase the plaintiff's units. There was no provision in the letter-offer for the method of acceptance by the plaintiff. Immediately following receipt of the letter, the plaintiff purchased five units of Sunaco by sending $10,000 from Kansas City, Missouri to Sunaco in Dallas, Texas. The plaintiff filed suit in Jackson County, Missouri when he did not receive the promised return on his investment. The question here is whether service of process under Missouri's long arm statute was valid.

■ The defendant filed a motion to quash service and to dismiss the petition without prejudice. Both the suggestions in favor of and the suggestions in opposition to the motion to dismiss contained affidavits from the defendant and the plaintiff, respectively. The trial court granted the defendant's motion. A motion to dismiss is converted into a motion for summary judgment when the parties introduce evidence beyond the pleadings. *Xavier v. Bumbarner & Hubbell Anesthesiologists,* 923 S.W.2d 428, 430 (Mo.App.1996). Affidavits which have been added to a motion to dismiss will convert the motion into one for summary judgment. Rule 74.04. When the parties introduce evidence beyond the pleadings, they are charged with the knowledge that the motion was converted. *Id.* The dismissal by the trial court served as an order granting summary judgment, and accordingly, our review will be of that order.

Appellate review of the propriety of summary judgment is essentially *de novo. ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The record is viewed in the light most favorable to the party against whom summary judgment was entered, and that party is afforded all reasonable inferences that may be drawn from the evidence. *Id.* Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the motion. *Id.* Summary judgment will be affirmed on appeal if the reviewing court determines that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *General Motors Corp. v. City of Kansas City,* 895 S.W.2d 59, 61 (Mo.App.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 277, 133 L.Ed.2d 197 (1995).

■ The issue on appeal is whether the trial court's denial of the plaintiff's service of process on the defendant under the Missouri long arm statute was valid. § 506.500, RSMo 1994. The purpose of the Missouri long arm statute is to confer jurisdiction over nonresidents who enter into various types of transactions with Missouri residents. *Mead v. Conn,* 845 S.W.2d 109, 112 (Mo.App.1993). The Missouri long arm statute gives the Missouri court jurisdiction, as relevant to the facts of this case, if it is determined either that: 1) the defendant transacted business within this state; or 2) there was the making of a contract within this state. §§ 506.500(1),(2), RSMo 1994. In addition, due process notions of fair play and substantial justice require that there be sufficient minimum contacts with the forum state.

■ Missouri courts have liberally construed the statutory requirement of transacting business within the state for the purpose of long arm jurisdiction. *Mead v. Conn*, 845 S.W.2d at 112. Long arm jurisdiction may exist even if the nonresident has not been required to be qualified to do business in Missouri. *State ex rel. Metal Serv. Ctr. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. banc 1984).

■ The defendant in this case sent a letter of personal guarantee to the plaintiff in order to entice him to invest in Sunaco Energy. His letter constituted an offer, stating that if a certain return on the investment was not realized within a specified time period, the defendant would refund the money to the plaintiff, less any profits which the plaintiff had received. This offer was accepted by the plaintiff when he immediately sent $10,000 from Missouri to Texas for the specific purpose of investing in Sunaco. It is well established that "the place where the final act occurs which makes a binding contract is the place of contract." *Thacker v. Massman Constr. Co.*, 247 S.W.2d 623, 630 (Mo.1952).

[6] An out-of-state offer which is accepted when mailed from Missouri to another state constitutes the making of a Missouri contract for purposes of long arm jurisdiction. *Servco Equip. Co. v. C.M. Lingle*, 487 S.W.2d 869, 870 (Mo.App.1972). The plaintiff's acceptance of the defendant's offer by mail created a Missouri contract. This contract created jurisdiction under the long arm statute, § 506.500.1(2), thus giving the trial court jurisdiction over the out-of-state defendant if the defendant also had sufficient minimum contacts with Missouri. Thus, the first part of the jurisdictional analysis is satisfied.

■ In the due process analysis involving jurisdictional questions, there are five factors which are examined: 1) the nature and quality of the contacts with the forum state, 2) the quantity of the contacts with the forum state, 3) the relation of the cause of action to the contacts, 4) the interest of the forum state in providing a forum for its residents, and 5) the convenience to the parties. *Mead v. Conn*, 845 S.W.2d at 112. The first three factors are the most important for the purposes of analysis. *Id.* The defendant also must have sufficient minimum contacts with the forum state so that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Elaine K. v. Augusta Hotel Assocs. Ltd. Partnership*, 850 S.W.2d 376, 378 (Mo.App.1993). Random, fortuitous, or attenuated contacts with the forum state cannot create jurisdiction. *Id.* If the defendant's conduct is such that he would expect to be hailed into a Missouri court, then sufficient minimum contacts are established. *Metal Serv. Ctr.*, 677 S.W.2d at 325, 328.

■ When examining the first due process factor, the nature and quality of the contacts with the forum state, Missouri courts have repeatedly held that minimum contacts are insufficient when a Missouri plaintiff solicits, or initiates contact with, an out-of-state defendant. *See M & D Enters., Inc. v. Fournie*, 600 S.W.2d 64 (Mo.App.1980) (holding that when Missouri plaintiff initiated contact and solicited out-of-state defendant for subcontracting work, minimum contacts with Missouri were not established); *Osage Homestead, Inc. v. Sutphin*, 657 S.W.2d 346 (Mo.App.1983) (holding that Missouri plaintiff who called out-of-state defendant after reading a "for sale" advertisement in a magazine and whose contract was made in Colorado did not have sufficient minimum contacts); and *Elaine K.*, 850 S.W.2d at 376, (holding that where Georgia hotel did not solicit Missouri corporation's business, or conduct any activity in Missouri, or enter into Missouri, there were insufficient minimum contacts). In *Metal Service Center*, the Missouri Supreme Court held that Missouri courts had jurisdiction over a foreign corporation even where the contract was made in Georgia because the Georgia defendant had initiated the contract and had made certain conditions on the Missouri plaintiff. *Metal Serv. Ctr.*, 677 S.W.2d at 325. "To permit Missouri courts to have jurisdiction [if the Missouri plaintiff initiated and solicited the contact] would amount to an open invitation to Missouri residents to go into other states, solicit business as an aggressor, and then, as a practical defense to any claim asserted by a nonresident, ... drag the buyer into Mis-

souri courts, as a strategic counter-move, through the use of § 506.500." *M & D Enters.*, 600 S.W.2d at 69.

The second factor in due process analysis requires an examination of the quantity of contacts the defendant had with Missouri.

The Texas defendant contacted the Missouri plaintiff in Missouri specifically to seek his investment in Sunaco. The defendant telephoned the plaintiff on several occasions in an attempt to solicit his investment. When the plaintiff refused to invest, the defendant continued to pursue the plaintiff by telephone contact and eventually convinced the plaintiff to invest by personally guaranteeing the investment. The defendant also corresponded by mail with the plaintiff in Missouri. The fact that the defendant initiated the contacts with the plaintiff, in addition to the defendant's repeated solicitation of the plaintiff in Missouri, satisfies the first two minimum contacts requirements because of the nature, quality and quantity of the contacts made by the Texas defendant to the Missouri plaintiff. The defendant's lack of physical presence will not defeat jurisdiction because his persistent solicitation of the plaintiff and his regular phone and mail contact with the state are adequate. Traditional notions of justice and fair play would not be offended by extending long arm jurisdiction over this defendant. *Metal Serv. Ctr.*, 677 S.W.2d at 327.

The third prong of the due process test requires an examination of the relationship between the cause of action and the contacts between the parties. The contacts between the defendant and the plaintiff led to the creation of a Missouri contract which guaranteed the plaintiff a return on his investment. The basis for the plaintiff's cause of action is the alleged breach of this contract which was entered into as a direct result of the defendant's solicitation of and contact with the plaintiff in Missouri.

Finally, although of less importance, the fourth and fifth prongs weigh in favor of the plaintiff. Missouri has an interest in providing a forum to its residents who allegedly have been harmed by the actions of a person in another state. This is a Missouri resident asking the Missouri court to assume jurisdiction. While it may impose some hardship on the defendant to litigate this case in Missouri, bringing him into this jurisdiction would not be an undue burden. His activities in this state make it reasonable and fair to require him to conduct his defense in this state. *Kulko v. California Superior Ct.*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1696–97, 56 L.Ed.2d 132 (1978).

The order of the trial court quashing service and dismissing the action without prejudice is reversed. Cause is remanded for further proceedings.

LOWENSTEIN and LAURA DENVIR STITH, JJ., concur.