96 F.Supp.2d 919 (2000)
UNCLE SAM'S SAFARI OUTFITTERS, INC., Plaintiff,
v.
UNCLE SAM'S ARMY NAVY OUTFITTERS-MANHATTAN, INC., Uncle Sam's Army Navy Outfitters-Niagara Falls, Inc., Richard Geist and Robert Geist, Defendant.
No. 4:99 CV 1633 DDN.
United States District Court, E.D. Missouri, Eastern Division.
April 13, 2000.
*920 Michael Kovac, Partner, Jonathan P. Soifer, Ned W. Randle, Polster and Lieder, St. Louis, MO, for Uncle Sam's Safari Outfitters, Inc., plaintiff.
James D. Bass, Jeffrey L. Michelman, Evan D. Buxner, Blumenfeld and Kaplan, St. Louis, MO, for Uncle Sam's Army Navy Outfitters, Inc., defendant.
James D. Bass, Jeffrey L. Michelman, Evan D. Buxner, Blumenfeld and Kaplan, St. Louis, MO, Lynn Armentrout, Fishman and Neil, New York City, for Robert Geist, Richard Geist, defendants.
Jeffrey L. Michelman, Evan D. Buxner, Blumenfeld and Kaplan, St. Louis, MO, Lynn Armentrout, Fishman and Neil, New York City, for Uncle Sam's Army Navy Outfitters-Manhattan, Inc., defendant.

MEMORANDUM
NOCE, United States Magistrate Judge.
This matter is before the court upon defendants' motion (Doc. No. 26) to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), defendants' motion (Doc. No. 36) for authorization for an interlocutory appeal to the Eighth Circuit if the court denies defendants' motion to dismiss, and plaintiff's provisional motion to transfer the action to the Southern District of New York (Doc. No. 35). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).
Plaintiff Uncle Sam's Safari Outfitters, Inc., brought suit against defendants Uncle Sam's Army Navy Outfitters-Manhattan, Inc., Uncle Sam's Army Navy Outfitters-Niagara Falls, Inc., Richard Geist, and Robert Geist for trademark infringement under 15 U.S.C. § 1114 and unfair competition under 15 U.S.C. § 1125. Plaintiff has asked for monetary and injunctive relief. Defendants moved to dismiss for lack of personal jurisdiction, claiming that they lack the requisite minimum contacts with the State of Missouri. A hearing was held on February 23, 2000.
A two-part inquiry is required to determine whether personal jurisdiction exists. The court must first examine whether personal jurisdiction exists under Missouri's long-arm statute. CPC-Rexcell, Inc. v. La Corona Foods, Inc., 912 F.2d 241, 243 (8th Cir.1990). If so, the court must determine whether the exercise of personal jurisdiction is consistent with the Due Process Clause. Id.
The Missouri long-arm statute, Mo.Rev. Stat. § 506.500, provides, in relevant part:

*921 1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:
* * * * * *
(3) The commission of a tortious act within this state.
Mo.Rev.Stat. § 506.500 (1993). This court has held that infringing upon a trademark is grounds for personal jurisdiction under "the commission of a tortious act" provision of Missouri's long-arm statute. Maritz v. Cybergold, Inc., 947 F.Supp. 1328, 1331 (E.D.Mo.1996). However, "the Missouri courts construe the Missouri long-arm statute to confer jurisdiction to the extent allowed by the Due Process Clause." Id. Therefore, the court will now turn to the minimum contacts analysis required by due process. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
The Eighth Circuit has set forth five factors test for determining whether there are sufficient minimum contacts:
(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. The first three factors are of primary importance.
Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 819 (8th Cir.1994). In Maritz, this court applied these five factors to determine whether personal jurisdiction existed by virtue of the defendant's Internet activities in a trademark infringement suit. There the defendant operated a web site which maintained a mailing list of Internet users. Maritz, 947 F.Supp. at 1330. The company provided those on the mailing list with advertisements that matched the users' specified interests. Id. The court ultimately held that it had personal jurisdiction over the defendant.
After looking to the nature and quality of the contacts with the forum, the court commented as follows: "Clearly, Cyber-Gold has obtained the website for the purpose of, and in anticipation that, internet users, searching the internet for websites, will access CyberGold's website and eventually sign up on CyberGold's mailing list." Id. at 1333. Regarding the quantity of those contacts, the court found that defendant "transmitted information into Missouri regarding its services approximately 131 times." Id. The court concluded that this fact suggested that defendant purposefully availed itself to the privilege of conducting business in Missouri. Id.
As to the relation of the cause of action to the contacts, the court found that "the litigation in this action against Cybergold results from alleged injuries that ... arise out of or relate to CyberGold's website and in the information posted at the website." Id. Finally, the court found that Missouri had an interest in resolving the case because a Missouri corporation's trademark was being infringed. Id. at 1334. The court also found that plaintiff had a strong interest in adjudicating the action in Missouri and that defendant had not shown that traditional notions of fair play and substantial justice would be demeaned by litigation in Missouri. Id.
Other circuits have taken a conservative view on imposing jurisdiction by virtue of a web site. Out of the four circuits that have considered the issue, using the minimum contacts analysis,[1] only the Sixth Circuit found jurisdiction. See CompuServe, Inc. v. Patterson, 89 F.3d 1257 (6th Cir. 1996). CompuServe is distinguishable *922 from the instant case, however, because of the facts that the defendant "chose to transmit his software from Texas to CompuServe's system in Ohio, that myriad others gained access to Patterson's software via that system, and that Patterson advertised and sold his product through that system." Id. at 1264. That court concluded that defendant had purposefully transacted business in Ohio. Id. at 1264-65.
The remaining cases involved defendants whose web sites merely posted information about their products and services. In Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (9th Cir.1997), the Ninth Circuit affirmed the district court's dismissal for lack of personal jurisdiction. The court held that "Cybersell FL did nothing to encourage people in Arizona to access its site, and there is no evidence that any part of its business (let alone a continuous part of its business) was sought or achieved in Arizona." Id. at 419. The court also determined, after examining various district court decisions, that:
[N]o court has ever held that an internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state. Rather, in each there has been something more to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state.
Id. at 418 (citations omitted).
Likewise, the Fifth Circuit reviewed a case in which the web site advertised defendant's products and, although it provided a printable mail-in order form and a toll-free telephone number, no orders were taken through the web site. See Mink v. AAAA Development LLC, 190 F.3d 333 (5th Cir.1999). After considering those factors, that court held that "[t]his does not classify the website as anything more than passive advertisement which is not grounds for the exercise of personal jurisdiction." Id. at 337.
Finally, the District of Columbia Circuit rejected a claim of personal jurisdiction when there was no evidence of a contractual relationship or comparable market activity in the district. See GTE New Media Services Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C.Cir.2000). The court maintained that "personal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District." Id. at 1349.
Perhaps the best summation of Internet jurisdiction law, however, which was heavily relied upon by the circuit courts cited above, was expressed by the Western District of Pennsylvania. In Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119 (W.D.Pa.1997), the court set out a sliding scale to determine personal jurisdiction:
At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.
Id. at 1124 (citations omitted).
In support of their motion to dismiss, defendants argue that they have not purposefully availed themselves of the benefits and protections of Missouri law. Defendants assert that their Internet web site is currently under construction and is *923 not taking any online orders; that as of the hearing date the only orders taken over the telephone have been from within the State of New York; and that they have added a disclaimer to the web site which states that their merchandise is not available for sale in the State of Missouri.
Plaintiff argues that defendants nevertheless have sufficient contacts with Missouri to satisfy due process. It argues that, by virtue of their Internet web site defendants seek customers from across the country; in the future it will be possible to order items from the on-line catalogue and the displayed toll-free telephone number.
The record indicates that defendants' have the following relevant contacts with the State of Missouri: (1) defendants have established a web site, www.iamunclesam.com, featuring their retail name, Uncle Sam's Army Navy Outfitters, which is accessible by anyone with Internet access; (2) the web site is currently under construction and no customers can place orders on-line at this time; (3) the web site provides a toll-free telephone number; it is possible to view the merchandise on the web site and order by telephone; (4) as of the date of the hearing, there have been seven telephone orders, all from customers within the State of New York; and (5) since the commencement of this judicial action, defendants have placed a disclaimer on the web site that states that merchandise is not available for sale to customers in the State of Missouri and that defendants are not affiliated with Uncle Sam's Safari Outfitters, Inc. From these facts, the court concludes that it does not have personal jurisdiction over the defendants.

The nature, quality, and quantity of the contacts with the forum state.
Although defendants' web site is available to anyone with Internet access, the mere operation of a web site, without "something more," is clearly insufficient as a basis for exercising personal jurisdiction. See Cybersell, 130 F.3d at 418; Mallinckrodt Medical Inc. v. Nycomed Imaging AS, 49 U.S.P.Q.2d 1474, 1476 (E.D.Mo. 1998) ("merely creating an Internet site is not an act purposefully directed toward the forum state and should not subject the party to personal jurisdiction throughout the nation and even the world").
Next, although the web site is under construction and no online orders are possible as yet, this court has found personal jurisdiction in a case where the respective web site was not yet fully operational. Maritz, 947 F.Supp. at 1333. The fact remains that defendants' ultimate goal is to operate a fully functioning web site with the capacity to take on-line orders.
The fact that defendants provide a toll-free number on the web site so that customers may order merchandise by telephone is not a strong basis for the exercise of personal jurisdiction in this case. See Mink, 190 F.3d at 337 (court did not find jurisdiction even though defendants provided toll-free number on web site). This conclusion is buttressed by the fact that, as of the hearing date, only seven telephone orders were taken by defendants and they were all from within the State of New York.
Finally, defendants' argument that they placed a disclaimer on the web site regarding the sale of merchandise in Missouri and the web site's lack of affiliation with plaintiff Uncle Sam's Safari Outfitters, Inc., gains them little in the legal analysis. This disclaimer came after the commencement of this suit. The circumstances at the time the action is commenced control the determination of personal jurisdiction. See Anderson v. Watt, 138 U.S. 694, 11 S.Ct. 449, 34 L.Ed. 1078 (1891); Smith v. Sperling, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957).
The instant case falls into the middle of Zippo's spectrum. Defendants operate a potentially interactive web site due to its future on-line ordering capabilities. However, defendants are clearly not doing business over the Internet at this time. See Zippo, 952 F.Supp. at 1124. As the District of Oregon pointed out in a similar case:

*924 Here, defendants have done nothing more than publish an interactive Web site. Defendants have not purposefully entered into contracts with Oregon residents through the Internet ... nor have defendants otherwise exchanged files electronically with forum residents so as to create "repeated" or "ongoing obligations."
Millennium Enterprises, Inc. v. Millennium Music, LP, 33 F.Supp.2d 907, 920 (D.Or.1999) (citing Burger King v. Rudzewicz, 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Under Zippo, personal jurisdiction for those cases falling into the middle spectrum category is determined by "examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." Zippo, 952 F.Supp. at 1124.
The nature, quality, and quantity of the contacts generated by the web site are minimal. Like the defendants in Millennium Enterprises, defendants in this case did nothing more than set up an interactive web site. There is no evidence that anyone from Missouri accessed the web site, let alone attempted to purchase anything over the telephone using the toll-free number provided. This fact distinguishes the instant case from Maritz, in which there was evidence that defendants transmitted information into Missouri approximately 131 times. See Maritz, 947 F.Supp. at 1333. And the only telephone orders taken have been from the State of New York.

The relation of cause of action to the contacts.
The relationship of plaintiff's cause of action to the contacts might be compelling if there was evidence that anyone from Missouri had accessed the web site. Plaintiff is concerned that those who access the site might confuse defendants' Uncle Sam's Army Navy Outfitters with its own Uncle Sam's Safari Outfitters. Therefore, if there were significant contacts with the State of Missouri, they would be related to the cause of action. However, no evidence of such contacts has been submitted by plaintiff.

The interest of the forum state in the action.
Missouri has an interest in resolving the case because a Missouri corporation's trademark is allegedly being infringed. The plaintiff also has an interest in adjudicating the action in Missouri because it is a Missouri corporation. However, these factors of the test are considered less important by the Eighth Circuit. See Bell Paper Box, 22 F.3d at 819. Furthermore,
[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.
World-Wide Volkswagen, 444 U.S. at 294, 100 S.Ct. 559, 62 L.Ed.2d 490 (citing Hanson v. Denckla, 357 U.S. 235, 251, 254, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). Therefore, the fact that Missouri and the plaintiff have interests in litigating this case here is not a sufficient basis for personal jurisdiction when the requisite contacts are lacking.
Plaintiff argues that the cease and desist letter sent to defendants on August 26, 1999, gave defendants fair warning of being haled into court in Missouri. Plaintiff argues that the letter was sent before the web site was established and that defendants launched the site anyway.[2] Plaintiff also argues that defendants did not post the disclaimer on the web site until after the suit was filed on October 15, 1999. In support of its argument plaintiff points to *925 the language of Millennium Music, "[i]f defendants do not have `fair warning' that their Internet activities would render them subject to jurisdiction in this forum, personal jurisdiction may not be had...." Millennium Music, 33 F.Supp.2d at 923.
In the record before the court, the cease and desist letter sent by plaintiff provided in relevant part:
Our client became aware of your use of its service mark for identical services, i.e., retail store services featuring military surplus goods, outdoor clothing and camping gear, in the August 15, 1999 issue of the "Army/Navy Store & Outdoor Merchandiser." The purpose of this letter is to demand that you immediately cease and desist from further infringement of our client's trademark rights under Federal Trademark law.
* * * * * *
We will expect to hear from you or your representative within 15 days of the date of this letter. If we do not, a lawsuit will be filed asking the Federal Court to enjoin you from further trademark infringement along with a request for damages.
Defn.Mot. to Dismiss, filed February 4, 2000 (Doc. No. 26), at Exh. D. The letter does not specifically suggest that the suit would be brought in Missouri. Rather, it specifies only the federal court system. A reasonable inference could be made that plaintiff might bring the suit in Missouri or another state. A threat to sue in an unspecified federal court is not fair warning that defendants might be haled into court in Missouri.
For the reasons set forth above, this court lacks personal jurisdiction over defendants. However, because the court has determined to transfer the action for the reasons set forth below, the motion to dismiss for lack of personal jurisdiction will be denied without prejudice.

Motion to transfer.
Plaintiff has provisionally moved to transfer the action to the Southern District of New York. The controlling authority is 28 U.S.C. § 1406, which provides in relevant part:
(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.
28 U.S.C. § 1406(a) (1993). This section is "broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); see also Mayo Clinic v. Kaiser, 383 F.2d 653, 654 (8th Cir.1967) (" § 1406(a) should be construed wherever possible to remove procedural obstacles which would prevent an expeditious and orderly adjudication of a case on its merits"). The transfer of the instant case to the Southern District of New York will more efficiently advance the case to an "expeditious and orderly adjudication" than would dismissal. See Mayo Clinic, 383 F.2d at 654.
For these reasons, the court will deny defendants' motion to dismiss. However, this action will be transferred to the Southern District of New York. Defendants' motion for the authorization of an interlocutory appeal is thus moot.
An appropriate order is issued herewith.

ORDER
In accordance with the Memorandum filed herewith,
IT IS HEREBY ORDERED that the motion of defendants to dismiss for lack of personal jurisdiction (Doc. No. 26) is denied without prejudice.
IT IS FURTHER ORDERED that the motion of defendants for authorization of an interlocutory appeal to the Eighth Circuit (Doc. No. 36) is denied as moot.
*926 IT IS FURTHER ORDERED that the motion of plaintiff for transfer (Doc. No. 35) is granted.
IT IS FURTHER ORDERED that this action be transferred to the United States District Court for the Southern District of New York.
NOTES
[1] The Second Circuit has also addressed this issue; however, the jurisdictional question in that case was resolved under the New York long-arm statute. See Bensusan Restaurant Corp. v. King, 126 F.3d 25 (2nd Cir.1997).
[2] Defendants claim "the web-site has been up and running for two years now, and was in development for a year prior to that period." See Defn. Reply, filed February 4, 2000 (Doc. No. 28), Reply Aff. of Richard Geist, at ¶ 9.